**COAKLEY & WILLIAMS, INC., a Maryland Corporation, Appellant,**

v.

**SHATTERPROOF GLASS CORPORATION, a Delaware Corporation, Appellee,**

v.

**WASHINGTON PLATE GLASS CO., INC., a Washington, D.C. Corporation, Third-Party Defendant.**

No. 81–1899.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 13, 1983.

Decided April 21, 1983.

---

**10.** Nos. 82–3166/67. No. 82–3137 is reversed *in part.*

**11.** Nos. 82–3035, 82–3132, 82–3137, and 82–3242.

C. Lawrence Wiser, Kensington, Md., for appellant.

Gerald I. Katz, Vienna, Va. (Wickwire, Gavin & Gibbs, P.C., Mark J. Stone, Vienna, Va., on brief), for appellee.

Before HALL, MURNAGHAN and SPROUSE, Circuit Judges.

MURNAGHAN, Circuit Judge:

The strategy of experienced trial lawyers is to avoid, in all but the clearest case, a defense on the basis of a Federal Rules of Civil Procedure 12(b)(6) motion contending that there has been a "failure to state a claim upon which relief can be granted." At so early a stage, all factual inferences must be made in favor of the plaintiff;[1] the facts must be viewed as the plaintiff most strongly can plead them.[2]

Hence, the issues presented to the district court, the foundation underlying much of the law which may govern at subsequent stages of the case, will be addressed in circumstances which may well prove unduly favorable to the plaintiff. With little or no chance of prevailing, the defendant, in filing a 12(b)(6) motion, risks educating the plaintiff to aspects of the case which might otherwise be overlooked or at least not arise in circumstances so predispositive to the plaintiff's side of things.

The present case illustrates the proposition. On an appeal from a dismissal under 12(b)(6) the accepted rule is "that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). Liberal construction in favor of the plaintiff is mandated. *Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 1848, 23 L.Ed.2d 404 (1969). We state as "facts" the allegations and inferences most favorable to the plaintiff.

Washington Plate Glass Company had a contract "to furnish and install aluminum and glass curtain wall and store front work"[3] on a building located in Lanham, Maryland being built by Coakley & Williams, Inc., the plaintiff. To accomplish its contractual undertaking, Washington purchased the glass spandrel required from the defendant, Shatterproof Glass Corp. Still other materials needed for the project, predominantly aluminum, it appears were acquired in part at least elsewhere.

The contract price under the Coakley and Washington agreement amounted to $262,500, subsequently increased by amendment to $271,350.[4] The glass purchased by Washington from Shatterproof cost $87,715.00,[5]

---

1. "[T]he allegations of the complaint should be construed favorably to the pleader." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

2. To the diminishing, if hardy, band of those who venerate common law pleading, a Rule 12(b)(6) motion is a demurrer in modern dress. 2A J. Moore, *Moore's Federal Practice* ¶ 12.08 (2d Ed.1982), p. 2265: "The motion to dismiss under Rule 12(b)(6) performs substantially the same function as the old common law general demurrer."

3. The contract referred to "Spandrel glass to be ¼" gold reflective glass with 1" rigid insulation fastened to curtain wall members approximately 1–½" behind glass spandrel." In addition the agreement called on Washington to provide, *inter alia:* a Texas Aluminum 400 series wall system, vision glass, aluminum objects of several kinds, steel anchor clips, field fasteners, and porcelain enamel panels.

4. Of that increase of $8,850, the bulk .($8,000) reflected specification of ASG Reflectoview Tru-Therm, 1 lite coated with 20 GI Gold and temperal monolithic spandrel ¼" 20 GI Gold to match. The remaining $850 increase was due to a change in the corner configuration from aluminum panel to ¼" Gold Reflectiveview glass.

5. The complaint is silent as to dollar amounts assignable to the additional materials. Obviously, the more they cost, the less the amount of the contract price attributable to services. We are not inclined to rely on statements of counsel at the time of argument in lieu of

with the proviso that units were "to be properly marked for field installation."

The work progressed and the contract for the aluminum and glass curtain wall and storefront work was completed in March of 1974. Discoloration of the glass ensued, and Coakley complained. To remedy the situation, Washington agreed to replace the glass at no cost to Coakley, and did in fact replace a substantial portion of the glass. Shatterproof supplied the replacement glass and reimbursed Washington for the cost of re-installation, accomplished in April of 1977.

By December of 1977, the glass had again discolored, and complaints began to flow from Coakley to Washington and Shatterproof in or about December 1978. Shatterproof declined to replace a second time. On January 14, 1981, Coakley filed suit against Shatterproof in the Circuit Court for Montgomery County, Maryland alleging breach of implied warranties of merchantability and fitness for a particular purpose. Reliance was placed on certain provisions of the Maryland Uniform Commercial Code, Annotated Code of Maryland, § 1–101 et seq.[6] Removal to the United States District Court for the District of Maryland followed, and Shatterproof sought dismissal under Fed.R.Civ.P. 12(b)(6).

A hearing on the 12(b)(6) motion followed at which Shatterproof contended (1) that the U.C.C. was inapplicable, (2) that lack of privity[7] was fatal to the claim, and (3) that the statute of limitations had run prior to commencement of the action. We now have the case before us on appeal from an order granting the 12(b)(6) motion and dismissing the case solely on the grounds that the U.C.C. was not applicable.[8]

■ Whether the U.C.C. applies turns on a question as to whether the contract between Washington and Coakley involved principally a sale of goods, on the one hand, or a provision of services, on the other. U.C.C. § 2–314 creates an implied warranty "that the *goods* shall be merchantable" to be "implied in a contract for their sale." Section 2–315 establishes an implied warranty "that the *goods* shall be fit" for a

---

well-pleaded allegations. Counsel for Coakley asserted that the evidence would show that the cost of materials was substantially in excess of the cost of installation, *i.e.* more than $130,000. Even without counsel's arguments as a basis, it is still appropriate to recognize that such a possibility is in no way foreclosed by the allegations in the complaint. The plaintiff, at the early 12(b)(6) stage, is entitled to the benefit of the doubt.

**6.** Efforts by the defendant Shatterproof to have Washington joined as a third party defendant were stymied by involuntary bankruptcy proceedings commenced against Washington.

**7.** The rule of law urged by Shatterproof was described in the 12(b)(6) motion as absence of a right in a buyer to recover "against a remote seller in the chain of distribution" for breach of implied warranties.

**8.** Shatterproof, in its Brief and in a Motion to Strike an issue, contends that one issue Coakley seeks to raise on appeal was never presented below. The issue complained of was phrased as follows:

Whether a defense to the applicability of Title 2 (Sales) of the Commercial Law Article of the Annotated Code of Maryland available to a contractor (based on the contractor's work as installer in a suit brought by the ultimate purchaser of the goods) is also available to the supplier of those goods to the installing contractor?

Coakley apparently did attempt to introduce a new question, described by it as

whether Shatterproof can take advantage of the nature of the contract between Coakley and Washington or whether its role as a servicer or supplier of goods is determined by its own contract with Washington.

Upon remand, nothing should prevent Coakley from arguing that Shatterproof, clearly having supplied goods, remains subject to the U.C.C., regardless of whether Washington might establish a defense on the merits because it could, through full development of the relevant facts and criteria show that the contract of Washington and Coakley was predominantly one to perform services and, hence, not governed by the U.C.C. Since the case is still very much alive, nothing will preclude Coakley, as plaintiff, from seeking to take advantage of any point which may be made in its favor, just as though the Rule 12(b)(6) motion, which will have failed, had never been brought.

However, we emphasize that the proposition raised for the first time on appeal has not figured in our disposition of the case. We have proceeded along the line that resolution of the goods or services dichotomy is decisive. Hence, the Motion to Strike, serving no significant purpose, is denied.

particular purpose, "[w]here the seller at the time of contracting has reason to know [the] particular purpose." (Emphasis added.)

Consequently, unless there has been a buyer of goods, the U.C.C. warranties of merchantability and of fitness for a particular use do not apply. Furthermore, unless there has been a buyer of goods,[9] the elimination of a requirement of privity would not have been achieved.[10] Accordingly, both questions (1) as to the availability of the warranties and (2) as to the amenability of Shatterproof, who was not in privity with Coakley, to suit by Coakley, come down to whether the transactions between Washington and Coakley was a sale of goods or the provision of services.

To resolve that question, we must address ourselves to a welter of cases reaching varying results depending on the considerations deemed to predominate in each particular case.[11] It should not pass unnoticed that all were decided at summary judgment

**9.** Under U.C.C. § 2–103(1)(a), the term "buyer" is defined, in unexceptional terms, as "a person who buys or contracts to buy goods."

**10.** *See* U.C.C. § 2–314(1)(b): "Any previous requirement of privity is abolished as between the *buyer* and the seller in any action brought by the *buyer*." (Emphasis added.) Absent compliance with § 2–314(1)(b), the lack of privity would have been fatal to Coakley's maintenance of the cause of action. *E.g., Vaccarino v. Cozzubo,* 181 Md. 614, 31 A.2d 316 (1943).

If the transaction was one for goods, Coakley was self-evidently the buyer. Shatterproof was the seller of goods in a transaction in which the intermediary, Washington, not Coakley, was the buyer. However, Washington's purpose in buying was to apply the items purchased to uses benefitting Coakley.

**11.** *E.g., Bonebrake v. Cox,* 499 F.2d 951, 960 (8th Cir.1974) (The appeal was from an adjudication on the merits, following a full trial, and reached the conclusion that a contract to supply and install bowling equipment dealt predominantly with goods, even though the amount of services involved was substantial. "The test for inclusion or exclusion [in or from the provisions of the U.C.C.] is not whether they are mixed, but, granting that they are mixed, whether their predominant factor, their thrust, their purpose, reasonably stated, is the rendition of service, with goods incidentally involved (*e.g.,* contract with artist for painting) or is a transaction of sale, with labor incidentally involved (*e.g.,* installation of a water heater in a bathroom). The contract before us, construed in accordance with the applicable standards of the Code, is not excluded therefrom because it is 'mixed,' ..."); *Burton v. Artery Co., Inc.,* 279 Md. 94, 96, 114–15, 367 A.2d 935, 936, 946 (1977) (In a case where entry of summary judgment was reversed, a standard form construction contract covering "all the work and services" to complete landscaping and sodding was, bearing in mind the canon of construction opposing narrow quibbling or falsely technical construction, held to be predominantly a transaction in goods rather than services); *Ranger Construction Co. v. Dixie Floor Co.,* 433 F.Supp. 442, 444–45 (D.S.C. 1977) (On summary judgment, without any contention that pertinent facts were in dispute, the court characterized the agreement for furnishing all labor and materials necessary to install resilient flooring as predominantly a service contract, made by a service corporation in customary construction contract language); *United States v. Akron Mechanical Contractors, Inc.,* 308 F.Supp. 496 (D.Md.1970) (Here the case proceeded to the summary judgment stage. The facts were stipulated, eliminating any possibility of elaboration or resolution of conflicts of fact. The case concerned a building subcontract for plumbing, heating, ventilating and air conditioning work. It was agreed by the parties that the contract covered installation of complete systems and not merely the sale of the constituent materials. The furnishing of materials being incidental to the construction activities, the then applicable Uniform Sales Act was deemed not to apply to the transactions. The real point in the case was whether title was retained or passed, and title was found to have passed. Such a conclusion would be consistent with a contract either for goods or for services, so the decision is not relevant to the problem we confront); *Snyder v. Herbert Greenbaum and Associates, Inc.,* 38 Md.App. 144, 147–48, 380 A.2d 618, 621 (1977) (Here the appeal followed a full trial on the merits. The contract was to supply and install carpeting and the underlying carpet pad in a large group of apartments. The court held: "Despite this difference in the facts which tend to favor the service purpose of the contract, application of the *Bonebrake* test leads us to conclude that the primary thrust of this contract is the *sale,* rather than the installation, of the carpet. Therefore, the Sales Title [of the Uniform Commercial Code] applies to this contract." (emphasis in original)); *Pittsburgh-Des Moines Steel Co. v. Brookhaven Manor Water Co.,* 532 F.2d 572, 580 (7th Cir.1976) (A designer, fabricator and engineer undertook to construct a one-million gallon water tank. In holding the transaction to be a sale of goods, not services, the court had this to say: "We

or beyond. No case involving the issue appears to have been disposed of at the Rule 12(b)(6) or demurrer stage. They emphasize, in particular, three aspects which may, or may not, constitute indicia of the nature of the contract: (1) the language of the contract,[12] (2) the nature of the business of the supplier,[13] and (3) the intrinsic worth of the materials involved.[14]

A distillation of the cases outlined in the foregoing notes 11–14 produces an inescapable conclusion that, on the facts in their present pro-plaintiff posture,[15] a reasonable viewing of them would permit a factfinder to conclude that the contract between Washington and Coakley predominantly concerned a sale of goods, and consequently was governed by the U.C.C. A Rule

find ample support in the cases arising under the UCC itself that the scope of coverage of 'goods' is not to be given a narrow construction but instead should be viewed as being broad in scope so as to carry out the underlying purpose of the Code of achieving uniformity in commercial transactions.... In the words of the UCC this was a 'movable' 'thing' 'specially manufactured.' That which PDM agreed to sell and Brookhaven agreed to buy was not services but goods as defined in the UCC." The decision came following a full trial, and affirmed an award of a judgment n.o.v.); *Van Sistine v. Tollard,* 95 Wisc.2d 678, 681–85, 291 N.W.2d 636, 638–39 (1980) (After a full exploration, in a trial, of pertinent facts, the contract was deemed to be predominantly for supply of services, not of goods, relying on the supplier's self-description as a contractor, the fact that over half of the monetary value was attributable to labor, with some materials furnished by the buyer. The decision was influenced by the court's disenchantment with a U.C.C. provision making a check in payment marked "paid in full" insufficient to its stated purpose where the payee cashed the instrument with an "under protest and without prejudice" endorsement); *Meyers v. Henderson Construction Co.,* 147 N.J.Super. 77, 82–83, 370 A.2d 547, 550 (1977) (A contract to furnish labor, materials (including glass purchased and mounted), tools and equipment for installation of overhead doors was, following a hearing on summary judgment, found to be predominantly for goods, not services, and so covered by the U.C.C.); *Air Heaters, Inc. v. Johnson Electric, Inc.,* 258 N.W.2d 649, 652 (N.D.1977) (On the basis of facts established in a full scale trial on the merits, a contract to design, manufacture, and install a complete electrical distribution system was scrutinized to determine whether it was predominantly for goods or predominantly for services. The court concluded that the plaintiff, the party on whom the burden lay to establish that the agreement was predominantly for a sale of goods simply failed to meet the burden at trial. "In this case we are not able to determine from the record whether the predominant factor and thrust of this contract is the rendition of services, or a transaction of sale. The record does not include enough factual data concerning this particular contract for us to make that determination." The import of the decision was largely eradicated by a conclu-

sion that, even outside the U.C.C., North Dakota law afforded a right to recover for breach of an implied warranty of fitness. Hence the outcome of the case was unaffected by the "goods or services" discussion); *Cork Plumbing Co., Inc. v. Martin Bloom Associates, Inc.,* 573 S.W.2d 947, 950, 958 (Mo.App.1978) (A judgment in the trial court, entered following a full-scale trial, was affirmed. Contracts were held to be predominantly for services which called for (a) completion of plumbing and sewer work in 176 apartment units and (b) plumbing work to be done on a clubhouse in the apartment complex. The character of the agreements as "construction contracts" appears to have influenced the decision.)

**12.** *Bonebrake v. Cox, supra,* 499 F.2d at 958 ("The language thus employed is that peculiar to goods, not services. It speaks of 'equipment,' and of lanes free from 'defects in workmanship and materials.' The rendition of services does not comport with such terminology."); *Ranger Construction Co. v. Dixie Floor Co., supra,* 433 F.Supp. at 445 ("It is interesting to note that throughout the contract the defendant, Dixie Floor Co., Inc., is not referred to as a materialman but rather as a subcontractor.").

**13.** *Ranger Construction Co. v. Dixie Floor Co., supra,* 433 F.Supp. at 445 ("The defendant's responses to interrogatories indicated that the defendant was essentially a service corporation engaged in the installation and construction of flooring.").

**14.** *Snyder v. Herbert Greenbaum & Associates, Inc., supra,* 38 Md.App. at 156–59, 380 A.2d at 626–27 (The case recognizes that the U.C.C. contemplated as a seller of goods one who obtains the component parts for special assembly, yet who, upon breach of the other party, is restricted to realization of junk value. It reached its decision that a sale of goods, not a provision of services, was involved though neither party "in any sense proved the amount of the resale proceeds of the carpet.").

**15.** We, of course, have no way of knowing what will actually be developed when the parties are put to their respective proofs.

12(b)(6) motion simply cannot serve to dispose of the case.

As to the first of the emphasized aspects, the contract between Washington and Coakley speaks in terms of furnishing and installing a wall and performing storefront work. Clearly, at the very outset of performance Washington had the responsibility to bring to the affected premises the materials which ultimately would form the glass curtain wall and store front. The U.C.C. in § 2–105 defines "goods" as "*all* things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (Title 8) *and things in action.*" (Emphasis added.) That at least creates an uncertainty to be resolved only by a full factual presentation to determine whether the nature of the Washington business was predominantly the provision of goods or the furnishing of services. The fact that Coakley was a building contractor specializing in construction is not sufficient to provide a completely definitive answer. While often, and perhaps customarily, a contractor is engaged in the provision of services, the scope of a contractor's work is not necessarily monolithic and, in the present circumstances, it becomes a question of unresolved fact whether Coakley, for the purposes of the single relationship to which we are restricted, was a buyer of goods.

In this connection, it is not irrelevant that Coakley has alleged that the purchases by Washington from Shatterproof included anchor clips and field fasteners. At the early stage at which we find ourselves, the allegation requires us to indulge the inference urged by counsel for Coakley·that putting the glass in place was a simple snap-on process requiring little expenditure of time or labor. One can readily imagine, without the advantage of specificity deriving from a full trial on the merits, that the contract

largely contemplated the provision of precast panels as goods, without the installation being nearly so extensive or significant as the supplying of the glass itself.

The fact that the contract does not follow a standard, routine or regularized form, coupled with the plaintiff's contention [16] that standard form contracts are virtually universal for construction (i.e., generally, service) contracts, operates to leave open the possibility of a finding that the contract is more one for goods than would be the customary construction contract.

Turning to the second point, the nature of Washington's business, the fact that Washington was a dealer and not a manufacturer does not have any particularly dispositive significance. Many retailers of goods function in the role of middleman. Shatterproof sold Washington materials in a transaction which unquestionably, on the sparse record before us at the preliminary stage at which we find ourselves, was a sale of goods, and the question comes down essentially to whether those materials or the services which Washington also provided under its contract with Coakley predominated. Without full consideration of as yet unascertained facts that question is simply not ripe for resolution. It is one of fact, not law; at least it is at this early stage.

Third, the complaint affords no realistic, and certainly no dispositive, information as to the value of the spandrels et al. in case of breakup into the component parts of the glass curtain wall and store front work. That can only be determined by further development of the record, and is, in all events, but one of several factors which must be evaluated in conjunction with all the others in resolving the ultimate factual issue: did Washington and Coakley deal primarily with goods or services?

Accordingly, Coakley has alleged enough to survive a motion to dismiss under Fed.R.

---

16. Although the *contention* is not spelled out in the complaint, notice pleading does not require such specificity. From what else is pleaded, and from the issues framed, manifestly the relevance of the character of ordinary construction contracts was such as to call for an inquiry as to which diligent counsel for Shatterproof had adequate notice.

Civ.P. 12(b)(6). Nor, at the other extreme, has it alleged too much, permitting sure ascertainment that services, not goods, were the gravamen of the transaction. Coakley should, therefore, be permitted to show, unless the statute of limitations bars recovery, that it was a buyer of goods and, therefore, entitled to proceed under the U.C.C. provisions.[17]

■ We turn, therefore, to the question of the proper way in which to apply the four year statute of limitations.[18] Shatterproof contends that the original installation completed in March of 1974 started the time running, pointing to the consideration that repair does not occasion a full resetting of the limitations clock.[19] However, the case *sub judice* involves not repair but replacement. To the extent any goods delivered as part of the original installation remain in place, suit with respect to them is time-barred. For breach of warranties of merchantability and of fitness for a particular

purpose, the full four years from the time of original installation have been available to the plaintiff for the institution of suit, where only repair has been undertaken. The goods originally supplied remain in place throughout. But that consideration is irrelevant, for suit has not been brought respecting any goods comprising the original installation. To the contrary, suit is confined to replacement goods. For them there has been a distinctly different tender of delivery, which took place only in April 1977. With regard to those replacement goods, there has been no possibility of suit for breach of the warranties until after the April 1977 delivery. The limitations period for the original installation expired in March of 1978. It may be supposed, as is perhaps customarily the case, that it took some time for the alleged breach of implied warranties claimed with respect to the replacement glass to manifest itself and, on the theory of Shatterproof, there would

**17.** Following argument on January 13, 1983 of the instant case, the Maryland Court of Appeals, on January 25, 1983, handed down its decision in *Anthony Pools, a Division of Anthony Industries, Inc. v. Sheehan,* 295 Md. 285, 455 A.2d 434 (1983). That case involves the somewhat different, although related, question of whether, in the case of a hybrid goods and services transaction, a disclaimer of an implied warranty of merchantability was unenforceable, as to the goods component of a contract predominantly for services, because such disclaimers are not legally permitted where there is a sale of consumer goods. U.C.C. § 2–316.1. The disclaimer was held unenforceable on the grounds that consumer goods retained their status as goods despite the fact that the contract was predominantly for services. The all or nothing contention that, the contract being predominantly one for services, none of the items covered by it should be treated as goods was rejected.

The Maryland Court of Appeals expressly reserved judgment as to whether U.C.C. § 2–316.1's ban on implied warranty disclaimers would also extend to consumer goods used up in the course of rendering the consumer service. At the very least, the result in *Anthony Pools* does nothing to question the soundness of the conclusion we have reached.

**18.** U.C.C. § 2–725:

(1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued.

By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.

(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

**19.** *Zahler v. Star Steel Supply Co.,* 50 Mich. App. 386, 393, 213 N.W.2d 269, 272 (1973) recites authorities dealing with the question of whether or not, in the event of repair, the original limitations period is tolled. Whether it is or is not tolled is, however, irrelevant to the issue we have to decide: namely, does an altogether new time bar come into existence when totally new goods are delivered to replace defective old ones?

While the facts of *Zahler* involved both repair and replacement to remedy unsatisfactory performance, the court appeared to perceive no distinction (presumably because counsel did not advance one) between modification, which leaves the original goods in place, and substitution, which brings altogether new goods for the first time on the scene, occasioning a distinctly different transaction-related tender of delivery.

have been little or no opportunity for the purchaser of goods ever to avail itself of the protection afforded by the U.C.C.

We conclude, therefore, that, with no language in the complaint indicating any disposition on Shatterproof's part to deliver replacement goods on different warranty terms than those attaching to the original goods, the new goods making up the subsequent tender of delivery carried their own limitations period.[20]

Insofar as U.C.C. § 2–725 is concerned, malfunction of replacement glass is as much a breach of the contract of sale as is the unsatisfactory performance of the original glass which led to the replacement. The cause of action accrues when the breach occurs, i.e., for the replacement glass upon tender of delivery in December of 1977. Suit commenced on January 14, 1981 was within four years of the accrual.

We emphasize that we do not hold that the original statute of limitations applying to the glass first installed in 1974 has been tolled. Those initial four years are not the limitations period to which our observations are addressed. Instead, the delivery of replacement glass, which never, theretofore, had been on the scene, constituted a distinct and separate accrual for purposes of computing the limitations period.

The result we have reached creates no strain on the desire for repose of stale claims which is the usual rationale behind statutes of limitations. For time bar purposes, the delivery of the replacement glass is completely analogous to a sale of the very same items to some other customer. Destruction of records, dimming of memories, and disappearance or death of witnesses are no more likely in the case of delivery of replacement materials than in the case of an independent sale of goods. That consideration, when coupled with the established disinclination of the Maryland Court of Appeals to entertain a limitations defense,[21] mandates the conclusion that Coakley was not too late in its initiation of the action.

Accordingly, the judgment is reversed and the case remanded for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.

---

20. *Cf. Roundhouse v. Owens-Illinois, Inc.,* 604 F.2d 990 (6th Cir.1979) involving a sale covering four batches of goods to be delivered in June, July, August and October, respectively. Each separate batch carried its distinct commencement date for limitations purposes under U.C.C. § 2–725, depending on when delivery of the particular batch took place. Suit begun in September with respect to the goods delivered in October was held not to be time barred, even though limitations had run as to the June, July and August batches.

21. *See Burton v. Artery Co., Inc.,* 279 Md. 94, 96, 367 A.2d 935, 936 (1977):

1 J. Poe *Pleading and Practice* § 618 (5th ed. Tiffany 1925) states that "the plea of limitations seems always to have been regarded as almost an odious defense, and has never been favored by the courts."