**LaBARGE, INC., Plaintiff,**

v.

**UNIVERSAL CIRCUITS INCORPORATED, Defendant.**

**Civ. 90–5012.**

United States District Court, W.D. Arkansas, Fayetteville Division.

Nov. 9, 1990.

John R. Eldridge, Burke & Eldridge, Fayetteville, Ark., for plaintiff.

Michael D. Booker, David L. Williams, Rose Law Firm, Little Rock, Ark., for defendant.

MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

This action involves the alleged breach of a sales contract for printed circuit boards. Plaintiff, LaBarge, Inc., was the buyer and the defendant, Universal Circuits, Inc., was the manufacturer and seller. Jurisdiction of this action is based on diversity of citizenship under 28 U.S.C. § 1332.

This lawsuit was filed on February 5, 1990, asserting two counts for relief against the defendant. By letter opinion

and order dated June 25, 1990, the court granted defendant's motion to dismiss count one of this action on the grounds it was barred by the statute of limitations. The parties have now stipulated that the court may decide whether count two of the complaint is barred by the statute of limitations on the basis of the joint stipulation of facts filed with the court along with the briefs of the parties.

The stipulated facts are as follows:

1. Prior to March 2, 1985, plaintiff, LaBarge, Inc. (hereinafter LaBarge) purchased from defendant, Universal Circuits Incorporated (hereinafter Universal) printed electronic circuit boards.

2. LaBarge paid Universal for the aforementioned circuit boards prior to March 2, 1985.

3. LaBarge determined that such circuit boards were defective and returned same to Universal, which circuit boards were accepted by Universal, between January, 1985, and July, 1985.

4. Subsequent to March 2, 1985, but prior to January 31, 1986, Universal shipped conforming circuit boards to LaBarge to replace the nonconforming circuit boards which had been returned.

5. Notwithstanding Universal's claim that proper credit was given LaBarge on the open account, LaBarge erroneously paid Universal for the replacement circuit boards subsequent to the reshipment date and subsequent to March 2, 1985, but prior to January 31, 1986.

6. LaBarge originally commenced an action in the United States District Court for the Eastern District of Missouri on March 2, 1989.

7. That the action commenced in the United States District Court for the Eastern District of Missouri was subsequently dismissed on defendant's motion without prejudice for lack of personal jurisdiction over the defendant on October 18, 1989.

8. That the within action was filed in this Court on February 5, 1990, and is a refiling of the former action originally commenced on March 2, 1989, in the United States District Court for the Eastern District of Missouri.

Defendant argues that count two is barred by the statute of limitations. First, defendant argues that the applicable statute of limitations is the four-year statute for breach of contracts of sale. Ark.Code Ann. § 4–2–725 (1987). Defendant argues the cause of action accrued on the date the invoices were sent and delivery was made to LaBarge. As all invoices and deliveries were sent or made prior to March 2, 1985, the defendant argues the limitations period would have expired March 1, 1989. In its response, LaBarge agrees that the applicable statute is § 4–2–725 but asserts that the cause of action did not accrue until the reshipment and double payment subsequent to March 2, 1985. LaBarge contends that "where a seller seeks to remedy an earlier defective performance, the statute of limitations under the Uniform Commercial Code does not commence until delivery of replacement goods. *Coakley & Williams, Inc. v. Shatterproof Glass Corporation,* 706 F.2d 456 (4th Cir.1983)." Thus, it is argued that the cause of action was tolled until Universal shipped conforming goods to replace the originally defective goods.

Because the proper way in which to apply the four-year statute of limitations may turn on whether the nonconforming boards were repaired or replaced, the court by letter dated September 27, 1990, requested counsel to answer the following question: Were the original nonconforming circuit boards reprocessed, remanufactured, or repaired in any other manner and reshipped to LaBarge as replacement boards? *See e.g., Coakley & Williams, Inc. v. Shatterproof Glass Corp.,* 706 F.2d 456 (4th Cir. 1983); *Standard Alliance Indus., Inc. v. Black Clawson Co.,* 587 F.2d 813, 822 (6th Cir.1978), *cert. denied,* 441 U.S. 923, 99 S.Ct. 2032, 60 L.Ed.2d 396 (1979); *Colorado–Ute Elec. Ass'n, Inc. v. Envirotech Corp.,* 524 F.Supp. 1152, 1155 (D.Colo. 1981); *Little Rock School District v. Celotex Corp.,* 264 Ark. 757, 574 S.W.2d 669 (1978). Counsel has now advised the court that the parties are unable, at this time, to answer the question. Instead the court is

advised that further discovery is necessary to make this determination. At this point, the court is asked to determine whether the Arkansas saving statute "saves" the cause of action refiled in this court.

LaBarge asserts that the prior filing of the same cause of action in the district court in Missouri on March 2, 1989, saves the cause of action since it was recommenced in this court within one year of the date of dismissal, October 18, 1989. The action was filed in this court on February 5, 1990. In making this argument, LaBarge relies on the Arkansas general savings statute, Ark.Code Ann. § 16–56–126 (1987) (one year statute) as well as the Uniform Commercial Code savings statute, Ark.Code Ann. § 4–2–725(3) (six month statute). In opposition, defendant argues that the savings statutes apply only when the first action is filed in Arkansas.

The question then is whether Arkansas would apply its savings statutes to a cause of action initially filed and dismissed in another state. For the purposes of resolving this issue, the same analysis would apply to both statutes since both provisions are Arkansas statutory law. Absent Arkansas authority on this point, we must determine how the Arkansas courts would resolve this issue.

Neither provision by its terms requires the previous action to have been filed within the State of Arkansas. Ark.Code Ann. § 16–56–126 provides in part:

> **16–56–126. Commencement of new action or filing mandate after nonsuit or arrest or reversal of judgment.**
>
> If any action is commenced within the time respectively prescribed in this act, in §§ 16–116–101—16–116–107, in §§ 16–114–201—16–114–209, or in any other act, and the plaintiff therein suffers a nonsuit, or after a verdict for him the judgment is arrested, or after judgment for him the judgment is reversed on appeal or writ of error, the plaintiff may commence a new action within one (1) year after the nonsuit suffered or judgment arrested or reversed.

Ark.Code Ann. § 4–2–725(3) provides:

> (3) Where an action commenced within the time limited by subsection (1) is so

terminated as to leave available a remedy by another action for the same breach such other action may be commenced after the expiration of the time limited and within six (6) months after the termination of the first action unless the termination resulted from voluntary discontinuance or from dismissal for failure or neglect to prosecute.

However, each does refer to other sections of Arkansas law. Specifically, each refers to statutorily enacted periods of limitation.

In this instance, the applicable statute of limitations is four years. Thus, if the suit had been timely filed in this state and then was dismissed, the savings statute would apply and the case could be refiled. Assuming the suit was originally filed in a state where the statute of limitations was the same as or shorter than the period specified by Arkansas law, is there any principled distinction that can be drawn to prohibit the application of the Arkansas savings statute to the Missouri case? In other words, would the policy behind the Arkansas savings statute be satisfied as long as the suit in question was commenced within the time frame specified by Arkansas law? For the reasons discussed below, we believe it would. *See e.g., Jones v. Mid–America Expositions, Inc.,* 708 F.Supp. 173, 176 (S.D.Ohio 1989) (Georgia savings statute would not apply to an action filed out-of-state if the action would have been regarded as untimely if originally filed in Georgia). *See also Stare v. Pearcy,* 617 F.2d 43 (4th Cir.1980) for a discussion concerning an attempt to apply the savings statute of one state to a case originally filed in another state with a longer statute of limitations.

■ Generally savings statutes are designed to avoid the harsh forfeiture of a plaintiff's rights. *Allen v. Greyhound Lines, Inc.,* 656 F.2d 418, 422 (9th Cir. 1981). Savings statutes "are remedial in nature. They reflect the legislature's intent to protect those who, although having filed in good faith and in a timely manner, would suffer a complete loss of relief on the merits because of a procedural defect."

*Linder v. Howard,* 296 Ark. 414, 418, 757 S.W.2d 549 (1988).

The Arkansas Supreme Court has liberally construed the savings statute to apply to a suit originally filed in a court lacking subject matter jurisdiction when the court has statutory authority to transfer such actions to a court of competent jurisdiction. *See Linder v. Howard,* 296 Ark. 414, 757 S.W.2d 549 (1988). The court has also applied the savings statute to an action originally filed in federal court even though the federal court lacked subject matter jurisdiction. *Coleman v. Young,* 256 Ark. 759, 510 S.W.2d 877 (1974). In so holding, the court stated *"Manees* points out that the statute should be given a liberal and equitable construction to secure that class of litigants who, 'from causes incident to the administration of the law, are compelled to abandon their present action, whether by their own act or the act of the court, when either would leave them a cause of action yet undetermined, by giving them a reasonable time in which to renew such action.'" *Id.* at 761, 510 S.W.2d 877, *quoting, L.R., M.R. & T.R. Co. v. Manees,* 49 Ark. 248, 4 S.W. 778 (1887).

Other courts addressing this issue are divided over this question. *See, e.g., King v. Nashua,* 763 F.2d 332, 334–35 (8th Cir. 1985) (concluding Missouri would not apply its savings statute when initial action was brought in another state). Having reviewed cases discussing this issue, we find the reasoning applied in *Stare v. Pearcy,* 617 F.2d 43 (4th Cir.1980) persuasive. In that case the court stated:

> There are a number of cases applying a 'general rule' that such a savings statute does not apply if the original suit was commenced in another forum or jurisdiction. In none of those cases, however, is there any reasoned explanation for such a rule. They suggest no rational basis for a distinction, saving a second case if the plaintiffs' first frustrated effort was commenced in one forum but not if it was commenced in another. The only suggestion in any of those cases that we have seen is that the commencement of an action in a foreign forum is not controlled by the statute of limitations of the state in which the second action is filed. Of course, there would be a problem if the statute of limitations in the state of first filing was longer than that of the state of second filing and the period of the latter statute had run when the foreign action was first filed, but that is a problem which should be capable of resolution under principles of conflict of laws, or, more likely, by construing the savings statute as applying only when the first action was commenced within the period limited by the statute of the forum state. There is, of course, no such problem here for Ohio and West Virginia both prescribed a two-year period of limitations for this kind of tort action, and the first Ohio action was commenced before the expiration of the West Virginia statutory period. And, of course, it simply is untrue that the statute of limitations of a given state never controls the commencement of actions in foreign forums.
>
> The 'general rule' is not universal. There are cases going the other way. These cases simply reflect a different philosophical approach to the problem. They give to savings statutes a liberal construction to serve their intended purpose to save good causes of action after the abortion of an earlier proceeding, and such a construction is entirely consistent with the whole statutory scheme of time limitations upon commencement of actions. The defendant here was informed of the commencement of the action in the Northern District of Ohio and received a copy of the complaint. The notice that she thus received that the plaintiffs were seeking judicial enforcement of their claims was no less in kind or quality than it would have been if the first action had been filed in a court in West Virginia, though later aborted. If the claim cannot be said to be stale if the first action had been filed in West Virginia, there is no greater reason to find that it was stale because filed in the Northern District of Ohio. The defendant must defend on the merits the claim of the children. There is no intrinsic unfairness to

her in requiring that she also defend on the merits the claims of the parents.

*Id.* at 44–45.

In light of the liberal construction given the savings statute by the Arkansas courts and the purposes underlying the savings statutes, we conclude that Arkansas would apply its savings statutes to actions originally filed in foreign states so long as the original action was commenced within the statute of limitations specified for similar causes of action under Arkansas law.