58 F.Supp.2d 682 (1999)
In re ORBITAL SCIENCES CORPORATION SECURITIES LITIGATION
Paul Copansky, et al., Plaintiffs,
v.
David Thompson, et al. Defendants.
Civil Action Nos. 99-197-A, 99-941-A.
United States District Court, E.D. Virginia, Alexandria Division.
July 30, 1999.
*683 Michael Nachmanoff, Cohen, Gettings, Arlington, VA, Jonathan M. Plasse, Goodkind, Labaton, New York City, Peter L. Sissman, Arlington, VA, Paul T. Gallagher, Cohen, Milstein, et al., Washington, DC, for plaintiff.
Stephen M. Sacks, Arnold and Porter, Washington, DC, for defendant.

JOINT ORDER
CACHERIS, District Judge.
For the reasons set forth in the July 30, 1999 Memorandum Opinions that the Court has issued in Civil Action Nos. 99-197-A and 99-941-A, it is hereby ORDERED:
(1) that the Defendants' Motion to Consolidate Civil Action No. 99-941-A into Civil Action No. 99-197-A is GRANTED;
(2) that the Defendants' Motions to Dismiss Civil Action Nos. 99-941-A and Civil Action No. 99-197-A are DENIED;
(3) that on or before August 13, 1999, the Plaintiff New York City Pension Funds ("NYCPF") shall file a "Revised Consolidated Amended Complaint" in Civil Action No. 99-197-A that incorporates the claims that the Plaintiff Paul Copansky has made in Civil Action No. 99-941-A but that makes no other alterations or amendments except by leave of the Court;
(4) that within five days thereafter, the Plaintiff Paul Copansky shall submit a consent order that dismisses Civil Action No. 99-941-A in favor of the Revised Consolidated Amended Complaint in Civil Action No. 99-197-A;
(5) that the Defendants need not file an answer in Civil Action No. 99-941-A, but shall file an answer to the Revised Consolidated Amended Complaint in Civil Action No. 99-197-A by August 27, 1999.
(6) that the Court shall retain continuing jurisdiction to revisit the terms of this Order, on motion or sua sponte, as circumstances may dictate over the course of this litigation; and
(7) that the Clerk of the Court shall send a copy of this Joint Order and the attached Memorandum Opinions to Cohen Milstein Hausfeld & Toll, P.L.L.C., Goodkind Labaton Rudoff & Sucharow L.L.P., and Arnold & Porter.

MEMORANDUM OPINION
This class action securities fraud case comes before the Court on the Defendants' Motion to Dismiss.

Facts
The Defendant Orbital Sciences Corporation ("Orbital") is a publicly-traded Delaware corporation that maintains its principal place of business in Dulles, Virginia. Orbital designs, manufactures, operates, and markets products and services for the satellite and aerospace industries. The Defendant David W. Thompson is Orbital's President, Chief Executive Officer, and Chairman of the Board, while the Defendant Jeffrey V. Pirone is its Executive Vice-President and Chief Financial Officer.
The Consolidated Amended Complaint[1] alleges that the Defendants exaggerated *684 the company's financial success for the first three quarters of 1998 and thereby inflated the price of its stock until a more accurate and less optimistic picture of its corporate performance over that time frame came to light. The New York City Pension Funds ("NYCPF")[2] allegedly suffered damages because they purchased Orbital stock at prices that were inflated in this way, and they are pursuing this putative class action in order to obtain relief under various provisions of the federal securities laws. The Defendants move to dismiss.

Standard of Review
A Motion to Dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. See Randall v. U.S., 30 F.3d 518, 522 (4th Cir.1994). Such motions "should be granted only in very limited circumstances," Rogers v. Jefferson-Pilot Life Ins. Co., 883 F.2d 324, 325 (4th Cir.1989), and a complaint will survive as long as it sets out sufficient facts for the Court to infer that each element of a cause of action is present, see Wolman v. Tose, 467 F.2d 29, 33 n. 5 (4th Cir.1972). But the Court must dismiss a case when it "`appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" De Sole v. U.S., 947 F.2d 1169, 1177 (4th Cir.1991) (quoting Coakley & Williams, Inc. v. Shatterproof Glass Corp., 706 F.2d 456, 457 (4th Cir. 1983)).

Analysis
The Consolidated Amended Complaint seeks to hold Orbital liable for violating Section 10 of the Securities Exchange Act of 1934 ("the '34 Act"), see 15 U.S.C. § 78j, and Rule 10b-5 as promulgated thereunder, see 17 C.F.R. § 240.10b-5. The Complaint seeks to recover from Thompson and Pirone under Section 20(a) of the '34 Act as well to the extent that they controlled the company. See 15 U.S.C. § 78t. The Defendants argue that the claim against Orbital should be dismissed because the Plaintiffs have failed to allege scienter in sufficient detail or to plead fraud with enough particularity, and that as a result, Thompson and Pirone are entitled to a dismissal as well.[3]
In order to state a claim under Rule 10b-5, a Complaint must allege (1) that the Defendants made a false or misleading statement of material fact, or that they failed to disclose a material fact under circumstances giving rise to a duty to disclose; (2) that they did so with scienter; (3) that the Plaintiffs justifiably relied on these misstatements or omissions; and (4) that the Defendants' misstatements or omissions and the Plaintiffs' reliance thereon proximately caused them to suffer harm. See Cooke v. Manufactured *685 Homes, Inc., 998 F.2d 1256, 1260  61 (4th Cir.1993) (citing 15 U.S.C. § 78j; 17 C.F.R. § 240.10b-5). The element of scienter requires the Plaintiffs to allege that the Defendants acted recklessly or with the intent to deceive, manipulate, or defraud, see Malone v. Microdyne Corp., 26 F.3d 471, 479 & n. 9 (4th Cir.1994), and under the Private Securities Litigation Reform Act ("PSLRA"), conclusory allegations of scienter are insufficient. The Plaintiffs must plead specific facts to create a "strong inference that the [D]efendant[s] acted with the required state of mind." Pub.L. No. 104-67, 109 Stat. 737 (1995) (codified in pertinent part at 15 U.S.C. § 78u-4(b)(2)).
The Plaintiffs' Complaint alleges that the Defendants must have acted with scienter because (1) Thompson and Pirone enjoyed compensation packages that gave them a motive to inflate the price of Orbital stock; (2) they assisted in the preparation of quarterly reports that exaggerated the company's financial performance for the first three quarters of 1998 and thereby caused the price of the stock to rise; (3) they sold a substantial percentage of their holdings in the company so as to profit from the price increases that resulted; and (4) Orbital later had to restate its earnings in a way that predictably caused the price of the stock to fall. (Consolidated Amended Complaint at ¶ 62.) The Court will examine each of these allegations in order to determine whether they individually or collectively create a sufficiently strong inference of scienter.
The Plaintiffs begin by arguing that the Defendants must have recklessly or intentionally exaggerated the company's financial performance in order to inflate the price of its stock because Thompson and Pirone enjoyed bonuses and incentives that gave them a reason to do so. (Consolidated Amended Complaint at ¶ 62(a) & (b).) If the Plaintiffs alleged nothing more, then this claim alone would fail to suggest that the Defendants acted with scienter. Companies routinely provide their executives with compensation packages that are tied to the price of their stock as an appropriate means of linking pay to performance. See Tuchman v. DSC Communications Corp., 14 F.3d 1061, 1068  69 (5th Cir.1994) (citing Ferber v. Travelers Corp., 785 F.Supp. 1101, 1107 (D.Conn.1991)). The resulting motivation could be that an executive wants to increase the actual value of the company or that she wants to make the company seem more successful that it really is. Without a meaningful way to determine which of these motivations is at work in a particular case, the mere fact that an executive's compensation depends on the price of the company's stock does not create a strong inference of scienter. See Acito v. IMCERA Group, Inc., 47 F.3d 47, 54 (2d Cir. 1995).
The fact that Thompson and Pirone assisted in the preparation of quarterly reports that Orbital later had to correct is similarly inadequate to suggest that the Defendants recklessly or intentionally misstated the facts at the time that those reports were compiled. A 10b-5 claim that seeks to hold a company liable for materially misstating its financial results must contain specific facts that would show that the Defendants acted with scienter when those results were issued. See Christidis v. First Pennsylvania Mortage Trust, 717 F.2d 96, 100 (3d Cir.1983). The Complaint in this case contains little to suggest that the Defendants had the requisite intent at the relevant time, and instead relies only on conclusory assumptions that the Defendants must have had scienter because Orbital would not otherwise have needed to restate its earnings at all. (Consolidated Amended Complaint at ¶ 62(d) & (e).) To allow a 10b-5 claim to proceed on these assumptions alone would eviscerate the scienter requirement, see In re In-Store Adver. Sec. Litig., 878 F.Supp. 645, 649 (S.D.N.Y.1995), by ignoring the fact that even the most well-intentioned of statements can later become inaccurate as subsequent revelations unfold.
But the Plaintiffs at bar do more than to rest on these allegations alone. *686 Sales of stock by corporate insiders can suffice to establish scienter if the trades were unusual in their timing or amount. See In re Advanta Corp. Sec. Litig., 180 F.3d 525, 540 (3d Cir.1999). The Complaint in this case asserts that the Defendants exaggerated the company's financial performance in order to inflate the price of its stock and that Thompson and Pirone subsequently sold 15% and 72% of their respective shares in the company before a more accurate and less optimistic picture of its financial success came to light and caused the price of the stock to fall. (Consolidated Amended Complaint at ¶ 51 & 62(c).) The fortuitous timing of their sales and the sizeable percentage of the shares that they sold are unusual and suspicious. See Stevelman v. Alias Research Inc., 174 F.3d 79, 86 (2d Cir.1999) (concluding that a strong inference of scienter could be drawn from the fact that an insider sold 40% of his holdings at a time when the price of the stock was inflated because of an alleged scheme to defraud); see also Friedberg v. Discreet Logic, Inc., 959 F.Supp. 42, 51 (D.Mass.1997) (concluding that scienter could adequately be inferred from the fact that several insiders sold 12%, one sold 33%, and another sold 50% of his holdings shortly before previous misstatements were corrected and the price of the stock fell). Under these circumstances, the factual allegations of the Complaint strongly urge the conclusion that the Defendants recklessly or deliberated inflated the price of the company's stock in order to profit from a scheme to defraud.[4]
The Defendants apparently sold some shares of Orbital stock even before they had embarked on this allegedly fraudulent scheme, and they purchased some shares as well after the scheme to defraud was already underway. Under certain circumstances, these types of trades will negate an inference of scienter because those who hope to inflate the price of a stock will presumably buy up shares beforehand and wait until after the price of the stock has risen before unloading their holdings so as to maximize their fraudulent gains. See In re Apple Computer Securities Litig., 886 F.2d 1109, 1117 (9th Cir.1989). But in order to nullify scienter in this way, the overall pattern of trading activity that the defendants undertook  when one compares the trades that are inconsistent with fraud with those that appear to effectuate it  must suggest that nothing unusual ever occurred. See id. The facts of the instant case are quite different.
The sales that Thompson and Pirone undertook before the class period in March of 1998, for example, netted little more than half the proceeds ($1,061,050 and $626,355, for a total of $1,687,405) that they realized later on after they allegedly inflated the price of Orbital stock and unloaded most of their shares as part of their scheme to defraud ($991,528 and $2,155,286, for a total of $3,146,814). (Affidavit of Jonathan Plasse at Ex. A, pp. 1 & 5; Consolidated Amended Complaint at ¶ 51.) The purchase that Pirone made during the class period in April of 1998 was relatively minor as well, amounting to no more than 1,100 shares of stock compared to the 57,000 shares that he sold to enjoy the fruits of his allegedly fraudulent plan. (Plasse Affidavit at Ex. A, p. 2; Consolidated Amended Complaint at ¶ 51.) When compared in this way, the trades under scrutiny, in which Thompson and Pirone unloaded so much of their holdings at such a suspiciously fortuitous time, remain sufficiently unusual to create a strong inference of scienter.[5]See Kaplan v. Rose, 49 F.3d 1363, 137980 (9th Cir.1994).
*687 Against this background, the otherwise neutral fact that the company pegged its executive compensation to corporate performance, and the similarly innocuous fact that its executives were responsible for preparing quarterly reports that later turned out to be false, acquire inferential relevance because the Defendants strongly appear to have availed themselves of a scheme to inflate the price of Orbital stock. "[T]he Court will not disregard ... allegations that incentive compensation was affected by ... fraudulent conduct" if the Complaint goes on to allege that those bonuses and gains were actually realized. In re Wellcare Management Group, Inc. Securities Litig., 964 F.Supp. 632, 639 (N.D.N.Y.1997); see also Schlagal v. Learning Tree Int'l, 1998 U.S. Dist. LEXIS 20306, at *50*51 (C.D.Cal.1998).
Thompson and Pirone's trading activity also renders Orbital's subsequent decision to restate its earnings more indicative of scienter than it otherwise might have been, standing alone. It is well-established that scienter "requires more than a misapplication of accounting principles," and so the mere fact that Orbital discovered a violation of generally-accepted accounting principles ("GAAP") in its financial statements would not necessarily mean that it recklessly or intentionally committed those violations in the first place. Chill v. General Elec. Co., 101 F.3d 263, 270 (2d Cir.1996). But the Complaint alleges that Orbital's misapplication of GAAP arose from fraudulent intent rather than an honest mistake or simple negligence (Consolidated Amended Complaint at ¶ 62(d)  (e)), and the fact that Thompson and Pirone so fortuitously profited from the GAAP violations before Orbital publicly revealed them strongly suggests the requisite intentionality.
Unless Orbital, Thompson, and Pirone really knew all along that the company's financial statements for the first three quarters of 1998 were exaggerated, then Thompson and Pirone presumably would have had no reason to unload so many of their shares at a time when the price of the stock was continuing to rise. They almost certainly would have retained a significant percentage of their holdings out of the honest belief that the company would continue to grow. The fact that they instead chose to sell their shares in relatively large amounts and at an unusual time, so soon before the company announced the restatement to earnings that caused the price of the stock to fall, is arguably too coincidental to be believed and thereby creates the strong inference of scienter that the PSLRA requires.
The Defendants might eventually be able to provide an explanation for Thompson and Pirone's trading activity, in which case the mere fact that Orbital pegged its executive compensation to corporate performance, the mere fact that Thompson and Pirone were responsible for preparing the financial statements at issue, and the mere fact that the company later had to restate its earnings, would all become innocuous. But at this stage of the case and for the purposes of a motion to dismiss, see Rubinstein v. Collins, 20 F.3d 160, 169 n.38 (5th Cir.1994), the unusual insider trading alleged in the Plaintiffs' Complaint suffices to create a strong inference of scienter.[6]
*688 The Complaint also describes the other elements of a 10b-5 claim with the level of detail that the PSLRA demands. The statute requires a 10b-5 claim to specify "each statement [that is] alleged to have been misleading, [along with] the reason or reasons why the statement[s] [were] misleading." 15 U.S.C. § 78u-4(b)(1). The Plaintiffs have identified Orbital's financial results for the first three quarters of 1998, and the accompanying press releases, as the statements in question. Rather than relying on conclusory allegations that those statements were false, compare In re Health Management Sys., Inc. Securities Litig., 1998 WL 283286, at *4-5 (S.D.N.Y.1998), they have proceeded to document that assertion with the company's actual admission that it would have to revise its earnings announcements in order to correct previous inaccuracies. Under these circumstances, the Complaint is sufficiently well-pled to survive. See Fed. R.Civ.P. 9(b).

Conclusion
For the foregoing reasons, the Defendants' Motion to Dismiss is DENIED. An appropriate order will issue.
NOTES
[1] Civil Action 99-197-A encompasses eighteen cases that the Court has consolidated into one. The named plaintiffs who filed these actions include Robin Switzenbaum (Civil Action No. 99-197-A), Stephen Blank (Civil Action No. 99-230-A), Jacob Freiman (Civil Action No. 99-231-A), Kulwant Sandhu (Civil Action No. 99-233-A), David Bromley (Civil Action No. 99-265-A), David Benjamin (Civil Action No. 99-266-A), Charles Fiermonte (Civil Action No. 99-279-A), Paul Krieger (Civil Action No. 99-284-A), Edward McCloskey (Civil Action No. 99-300-A), Darren Spademan (Civil Action No. 99-309-A), Alexander Urman (Civil Action No. 99-310-A), Rebecca Neis (Civil Action No. 99-347-A), Michael Cafferty (Civil Action No. 99-368-A), Terence Byrne (Civil Action No. 99-384-A), Barbara Eisenberg (Civil Action No. 99-414-A), Richard Lam (Civil Action No. 99-524-A), Yakov Prager (Civil Action No. 99-533-A), and Bert Larson (Civil Action No. 99-385-A).
[2] The NYCPF consists of five municipal pension funds  the New York City Employees' Retirement System ("NYCERS"), the New York City Fire Department Pension Fund ("FDPF"), the New York City Board of Education Retirement System ("BERS"), the New York City Police Superior Officers' Variable Supplements Fund ("PSOVSF"), and the New York City Firefighters' Variable Supplements Fund ("FFVSF")  that the Court has appointed to serve as the Lead Plaintiff in this litigation.
[3] A claim under Section 20(a) against those who controlled Orbital would require proof that the company violated 10b-5. See Moss v. Morgan Stanley Inc., 719 F.2d 5, 16  17 (2d Cir.1983).
[4] Contrary to what the Defendants contend, the fact that the Complaint fails to contrast the sales that Thompson and Pirone made during the class period with the transactions that they undertook in the past is irrelevant because the percentage of shares that they sold is large and unusual enough to raise the requisite suspicion even without a record of previous trading activity. See Stevelman, 174 F.3d at 84  85.
[5] The fact that Orbital made a secondary public offering on April 20, 1998, just one day before it issued the first of its allegedly misleading financial statements, is similarly insufficient to negate the inference of scienter, because it is Thompson and Pirone's trading activity, not that of the company per se, that is the cause of suspicion in the Complaint.
[6] The PSLRA requires the allegations in a Complaint for relief under 10b-5 to raise a "strong inference" that the Defendants acted with scienter. 15 U.S.C. § 78u-4(b)(2). The Fourth Circuit has yet to determine the point at which a Complaint will suffice to meet this standard, and the other circuits are deeply divided in this regard. The Second Circuit has held that a strong inference of scienter can be drawn if the Defendants had a motive and the opportunity to commit fraud. See Press v. Chemical Inv. Servs. Corp., 166 F.3d 529, 538 (2d Cir.1999). The Ninth Circuit has adopted a more stringent approach that only permits a strong inference of scienter to be drawn when specific facts in the Complaint suggest that the Defendants acted with a "heightened form of [deliberate or conscious] recklessness." In re Silicon Graphics Inc. Sec. Litig., 1999 WL 446521, 1999 U.S.App. LEXIS 14955, at *3*4 (9th Cir. July 2, 1999). A number of other interpretations abound. See, e.g., In re Comshare, Inc. Sec. Litig., 183 F.3d 542 (6th Cir.1999); In re Advanta Corp. Sec. Litig., 180 F.3d 525, 540 (3d Cir.1999).

The Court need not determine the appropriate interpretation to use, because whether applied to a test of motive and opportunity or to a test of heightened recklessness, unusual insider trading is sufficient to create a strong inference of scienter. See In re Oxford Health Plans, Inc. Securities Litig., 187 F.R.D. 133, 140 n. 1 (S.D.N.Y.1999).