Colby S. PARKS and Marion H. Parks, Plaintiffs,

v.

ALTEON, INC.; Marion Merrill Dow, Inc.; Hoechst Marion Roussell; and Aventis Pharmaceuticals, Inc., Defendants.

No. CIV.1:00CV00657.

United States District Court, M.D. North Carolina.

April 16, 2001.

---

Grover C. McCain, Jr., M. Ross Oglesbee, Faison & Gillespie, Durham, NC, for Colby S. Parks, Marion H. Parks, plaintiffs.

Allan R. Gitter, Womble Carlyle Sandridge & Rice, Grover Gray Wilson, Wilson & Iseman, Winston–Salem, NC, Harvey L. Kaplan, Joseph G. Baladi, Shook Hardy & Bacon, P.C., Kansas City, MO, for Alteon, Inc., Marion Merrill Dow, Inc., Hoechst Marion Roussell, Aventis Pharmaceuticals, Inc., defendants.

## MEMORANDUM OPINION

BULLOCK, District Judge.

Plaintiffs Colby S. Parks and Marion H. Parks filed this diversity action on July 13, 2000, asserting claims of negligence, breach of implied warranty, fraud, and negligent infliction of emotional distress against Defendants Alteon, Inc., Marion Merrill Dow, Inc., Hoechst Marion Roussell, Inc. (a/k/a Hoechst Marion Roussell USA), and Aventis Pharmaceuticals, Inc. Defendant Alteon, Inc., has moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) on Plaintiffs' claim for breach of implied warranty. Defendants Marion Merrill Dow,

Inc., Hoechst Marion Roussell, Inc. (a/k/a Hoechst Marion Roussell USA), and Aventis Pharmaceuticals, Inc. (collectively "Aventis Defendants") have moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) Plaintiffs' claim for breach of implied warranty. This motion will be treated as a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) for reasons stated in this memorandum opinion. For the following reasons, Defendants' motions will be granted.

## FACTS

Plaintiffs' claims arise from injuries allegedly suffered as a result of Colby Parks' participation in a drug-trial study entitled "A Placebo–Controlled Safety and Efficacy Study of Pimagedine in Diabetic Patients with Overt Diabetic Nephropathy." Defendants manufacture and sell pharmaceutical drugs, including aminoguanidine, also known as pimagedine. Plaintiff Colby Parks is a diabetic and qualified for the pimagedine study initiated by the Defendants and conducted at UNC Hospitals in Chapel Hill, North Carolina. The study involved about 660 subjects at fifty institutions.

As a participant in the study, Colby Parks was required to visit UNC Hospitals approximately twenty times for study-related procedures over a two-to-three-year period. Colby Parks entered the study in October 1995. Parks began to exhibit significantly abnormal lab results during the study. After about nineteen months in the study, Parks suffered renal failure and was admitted to the hospital on June 10, 1997. At this time, Parks ceased participation in the drug study. By June 25, 1997, Parks suffered complete kidney failure and went on dialysis. After more than two years on dialysis, Colby Parks underwent a kidney and pancreas transplant on March 26, 2000. Plaintiffs allege that Colby Parks' kidney failure and other health problems, such as permanent vision loss, circulatory problems, and loss of part of his foot were caused by medication manufactured by Defendants.

## DISCUSSION

All Defendants have moved for dismissal of Plaintiffs' breach of warranty claim. Defendant Alteon, Inc., moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Because the Aventis Defendants answered Plaintiffs' complaint before filing their motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), their motion will also be considered as a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Defendants make the same argument in their respective briefs.

 A motion for judgment on the pleadings is determined by the same standard applied to a motion to dismiss for failure to state a claim. *See Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 644 (2d Cir.1998); *Pledger v. N.C. Dep't of Health & Human Servs., Dorothea Dix Hosp.*, 7 F.Supp.2d 705, 707 (E.D.N.C. 1998). Dismissal is improper "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In considering a motion to dismiss, the court accepts as true all well-pleaded allegations and views the complaint in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.1993). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the

claims.'" *Revene v. Charles County Comm'rs*, 882 F.2d 870, 872 (4th Cir.1989) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).

■ The claim of breach of implied warranty of merchantability is established by Section 25–2–314 of the North Carolina Uniform Commercial Code (the "NCUCC"). N.C. Gen.Stat. § 25–1–101 *et seq.* The elements required to state a claim for breach of implied warranty of merchantability are: "(1) the goods bought and sold were subject to an implied warranty of merchantability, (2) the goods were defective at the time of sale, (3) the defective nature of the goods caused plaintiff's injury, and (4) damages were suffered as a result." *Goodman v. Wenco Foods, Inc.*, 333 N.C. 1, 423 S.E.2d 444, 454 (N.C. 1992). The parties dispute whether the first element is satisfied in Plaintiffs' allegations.

■ Accepting Plaintiffs' pleadings as true, Colby Parks has clearly given sufficient consideration for a valid contract between himself and Defendants by submitting himself to the required regiment of Defendants' drug study. Defendants gave Parks the chance to receive the drug pimagedine (participants in the study could have been given a placebo rather than pimagedine), in exchange for his agreement to submit to extensive testing and observation over a significant period of time. Defendants likewise have given sufficient consideration for a valid contract. The question is whether this contract comes within the reach of the NCUCC.

Defendants argue that Plaintiffs' claim for breach of implied warranty must be dismissed for failure to state a claim under the NCUCC. According to the NCUCC, "[u]nless excluded or modified, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." N.C. Gen.Stat. § 25–2–314(1). A sale is defined by the NCUCC as "the passing of title from the seller to the buyer for a price." N.C. Gen.Stat. § 25–2–106(1). A price "can be made payable in money or otherwise." N.C. Gen. Stat. § 25–2–304(1).

Defendants contend that there was no "sale" as required under the NCUCC. In contrast, Plaintiffs argue that Colby Parks' participation in the study, which involved extensive poking and prodding and provided valuable research data for the Defendants, was his "payment" for the drug pimagedine. Plaintiffs assert that "payment" is not required to be monetary under the NCUCC.

In support of their proposition that a prescription for medicine does not constitute a sale of goods, Defendants rely on *Batiste v. American Home Prods. Corp.*, 32 N.C.App. 1, 231 S.E.2d 269, *review denied*, 292 N.C. 466, 233 S.E.2d 921 (1977). As Plaintiffs point out, this case is inapposite. In *Batiste* the court addressed a physician's liability for writing a prescription for an oral contraceptive that allegedly caused the plaintiff to suffer a stroke. The court concluded that a breach of warranty claim could not lie against the defendant physician stating that "[i]t is [the physician's] professional services and his skill for which he is paid, and they are the essence of the relationship between him and his patient." *Id.* at 272. Defendants are not merely prescribing a drug in this case, but are the manufacturers of the drug. Therefore the reasoning of *Batiste* is inapplicable.

Likewise, the North Carolina Court of Appeals found that a public hospital, its trustees, administrator, and physicians were not "sellers" in *Cameron v. New Hanover Mem. Hosp., Inc.*, 58 N.C.App. 414, 293 S.E.2d 901, 920 (1982), and that a

dentist providing defective dentures was not a merchant or seller for the purpose of applying the NCUCC in *Preston v. Thompson,* 53 N.C.App. 290, 280 S.E.2d 780, 785 (1981). Because Plaintiffs bring their claims against the drug manufacturers in this case, the cases proffered by Defendants do not indicate that the NCUCC is inapplicable to Plaintiffs' claims.

Plaintiffs cite *Foyle By and Through McMillan v. Lederle Labs.,* 674 F.Supp. 530 (E.D.N.C.1987), for the propositions that a pharmaceutical drug is a good under the NCUCC and that a claim for breach of implied warranty will lie against a pharmaceutical drug manufacturer whose product is used by a plaintiff purchaser. In that case, parents brought an action against a vaccine manufacturer when their two-month-old daughter suffered seizures, neurological disorders, and irreversible brain damage as a result of a vaccination produced by the defendant drug manufacturer. The court denied the defendant's motion for summary judgment on the breach of implied warranty claim, stating that there were "substantial matters of material fact" involving the claim. *Id.* at 534. The court treated the claim as a proper one to bring under the NCUCC, but found that the factual matters at issue involved the merits of the claim. There did not seem to be any dispute in *Foyle* regarding whether the NCUCC applied.

■ Assuming Plaintiffs are correct that Defendants "sold" their "good" to Plaintiffs for a "price" as Plaintiffs argue, the contract for participation in the study is not solely a contract for the sale of goods. The exchange at issue in this case is one involving the provision of goods (the "study medication", possibly the drug pimagedine), payment ($50.00 for each visit), and services (medical supervision) for the provision of a service (Colby Parks' participation in the study). (*See* Study Contract, attached to Def. Alteon, Inc.'s Answer and pleaded as Def. Alteon, Inc.'s 4th defense) (hereinafter "Study Contract").[1] When a contract is a mixed one for the sale of goods and services, the Fourth Circuit has held that "[w]hether a particular transaction is governed by the U.C.C. rather than the common law or other statutory law, hinges on the predominant purpose of the transaction, that is, whether the contract primarily concerns the furnishing of goods or the rendering of services." *Princess Cruises, Inc. v. General Elec. Co.,* 143 F.3d 828, 832–33 (4th Cir.1998). The Fourth Circuit has also suggested the following significant factors to be considered in making this determination: "(1) the language of the contract, (2) the nature of the business of the supplier, and (3) the intrinsic worth of the materials." *Id.* at 833.

The contract between Colby Parks and Defendants did not simply require Defendants to provide a good. Defendants also were required to provide monetary remuneration, medical supervision, clinical tests, and various physical examinations. The contract between the parties almost entirely concerns the procedures that would be provided for a study participant and the obligations of the participant. The references to pimagedine are minimal. The contract does not promise that a participant will receive any of the actual drug rather than the placebo, much less set out an amount of the drug (either in a number of doses or measurements of doses) that a participant will receive.

---

1. In determining a motion for judgment on the pleadings, the court may consider documents incorporated by reference in the pleadings. *See In re Fultz,* 232 B.R. 709, 716 (Bankr.N.D.Ill.1999); *Biospherics, Inc. v. Forbes, Inc.,* 989 F.Supp. 748, 749 (D.Md. 1997), *aff'd,* 151 F.3d 180 (4th Cir.1998).

The language of the contract focuses on the services provided by both the Defendants and study participants. The contract states that the purpose of the study is "to determine the safety and effectiveness of pimagedine in protecting kidney function in patients with insulin-dependent diabetes and abnormal kidney function." (Study Contract, p. 1). The contract describes pimagedine as an "investigational medication which may help slow the progression of diabetic kidney disease." *Id.* About one page of the eleven-page contract describes pimagedine and its possible side effects and potential risks. (Study Contract, pp. 5–6). The majority of the contract describes the services provided to the study participants and the study participants' obligations. This includes details regarding urine samples, blood draws, general physical exams, eye exams, telephone interviews, kidney function tests, the monitor of blood sugar levels and blood pressure, stool samples, endoscopies, and possible pregnancy tests. The contract also states that the benefits participants receive for their involvement in the study are "close monitoring and medical follow up for [the participant's] diabetes, high blood pressure, and kidney disease" and "if [the participant is] assigned to receive pimagedine, [the participant] may benefit from its actions if it is found to be effective in humans." Participants are cautioned, however, that "[n]o personal benefit … can be guaranteed. If [the participant] receive[s] placebo (inactive drug), [the participant] will not receive any direct medical benefit from the study drug." (Study Contract, p. 9). Although Defendants are testing pimagedine for the ultimate purpose of selling the drug, the language of the contract at issue emphasizes the services involved in the study, indicating that the predominant purpose of the transaction concerns the rendering of services, not the sale of goods.

Plaintiffs allege that Defendants are in the business of manufacturing and selling pharmaceutical drugs. (Am.Compl.¶¶ 10, 31). All Defendants except Alteon admit this. Alteon admits that it manufactures pharmaceutical drugs but denies that it sells pharmaceutical drugs. Despite the appearance that the nature of the businesses of the supplier Defendants are predominantly the production and sale of goods rather than the provision of health-related services, the contract at issue exceeds the bounds of a pure sale-of-goods contract.

The final factor the Fourth Circuit has identified is difficult to apply in this case. As in *Princess Cruises,* the contract in this case did not separately itemize the value of the materials and the services. 143 F.3d at 833. Therefore, the court cannot separate the value of the goods received by Plaintiff Colby Parks (some amount of the drug pimagedine) and the value of the services provided to Colby Parks (nineteen months of medical supervision). The analysis is further complicated by the fact that the contract does not provide for the provision of the drug pimagedine, but rather for the chance to receive the drug pimagedine and the possibility of receiving the placebo. If the drug pimagedine and the placebo were amalgamated as one good, *i.e.* the drug-study product, the value of the good would have to be sixty-seven per cent (67%) of the value of the same amount of pimagedine because one-third ($\frac{1}{3}$) of the study participants received the placebo. (Study Contract, p. 3). Additionally, the contract does not specify how much of the drug-study product a participant will receive because the number of doses and measurements of doses are not described.

The drug-study contract is a mixed contract for goods and services. The sale of goods was not the predominant purpose of the transaction and therefore the North

Carolina Uniform Commercial Code does not apply, and the Plaintiffs' claim for breach of the implied warranty of merchantability will be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' motions for judgment on the pleadings on Plaintiffs' claim for breach of implied warranty will be granted.

An order and judgment in accordance with this memorandum opinion shall be entered contemporaneously herewith.

*ORDER and JUDGMENT*

For the reasons set forth in the memorandum opinion filed contemporaneously herewith,

IT IS ORDERED that Defendants' motions for judgment on the pleadings on Plaintiffs' claim for breach of implied warranty [Docs. # 10 and # 12] are **GRANTED**, and Plaintiffs' claim for breach of implied warranty is **DISMISSED**.